## PEOPLE v MOREY

Docket No. 193900. Submitted February 10, 1998, at Grand Rapids. Decided June 2, 1998, at 9:10 A.M. Leave to appeal sought.

Sherry A. Morey was convicted by a jury in the Kent Circuit Court, H. David Soet, J., of pandering and of accepting the earnings of a prostitute after two women from the defendant's massage service agreed with an undercover police officer to perform sexual acts in exchange for money and gave to the defendant her share of money paid to them by the officer and by previous customers. The defendant appealed.

The Court of Appeals *held*:

1. Sufficient evidence supports the conviction of accepting the earnings of a prostitute. One of the women, by initiating fellatio on the undercover officer, performed a sexual act for money, and both women handed over to the defendant money from the officer and from previous customers.

2. The pandering statute applies to individuals who induce, persuade, encourage, inveigle, or entice women who are not prostitutes into becoming prostitutes. A person cannot be convicted of pandering if the woman at issue is already a prostitute or the person reasonably believes that the woman is already a prostitute. In this case, the defendant's conviction of pandering must be reversed because the prosecution failed to produce evidence demonstrating beyond a reasonable doubt that the women in question were not prostitutes before their employment by the defendant and that the defendant induced, persuaded, encouraged, inveigled, or enticed them into becoming prostitutes.

3. Under the facts presented by this case, the prosecutor did not abuse his discretion in charging the defendant with pandering and accepting the earnings of a prostitute, even if he could have charged other offenses instead.

4. The pandering statute and the statute proscribing the acceptance of earnings of a prostitute are not unconstitutionally vague or overbroad. The statutes provide fair notice of conduct proscribed, do not confer on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed, and do not prohibit constitutionally protected conduct.

Affirmed in part and reversed in part.

1. CRIMINAL LAW — PROSTITUTION — FELLATIO.

An act of prostitution occurs when a person agrees to perform fellatio in exchange for money and initiates physical contact with the customer's penis; the person need not complete the act of fellatio to be deemed to have engaged in prostitution.

2. CRIMINAL LAW — PANDERING.

A person commits pandering by inducing, persuading, encouraging, inveigling, or enticing a woman who is not a prostitute into becoming one; pandering is not committed where the woman at issue is already a prostitute or is reasonably believed to already be a prostitute (MCL 750.455; MSA 28.710).

3. CRIMINAL LAW — PANDERING — ACCEPTING EARNINGS OF A PROSTITUTE — CONSTITUTIONAL LAW — VAGUENESS — OVERBREADTH.

The pandering statute and the statute proscribing the acceptance of earnings of a prostitute are not unconstitutionally vague or overbroad; they provide fair notice of conduct proscribed, do not confer on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed, and do not prohibit constitutionally protected conduct (MCL 750.455; 750.457; MSA 28.710, 28.712).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *William A. Forsyth,* Prosecuting Attorney, *Timothy K. McMorrow,* Chief Appellate Attorney, and *Vicki L. Seidl,* Assistant Prosecuting Attorney, for the people.

*Jeanice Dagher-Margosian,* for the defendant.

Before: GRIFFIN, P.J., and HOLBROOK, JR., and NEFF, JJ.

NEFF, J. Following a jury trial, defendant was convicted of pandering, MCL 750.455; MSA 28.710, and accepting the earnings of a prostitute, MCL 750.457; MSA 28.712. She was sentenced to three years' probation, the first four months to be spent in jail. She now appeals as of right. We affirm in part and reverse in part.

I

A Grand Rapids police officer, taking part in an undercover operation designed to curtail prostitution, called defendant's massage service from a hotel room and made an appointment for a massage at a cost of $75 an hour. Defendant agreed to send over a blonde in her mid-twenties with a nice figure. Shortly thereafter, a masseuse calling herself "Heather" and later identified as Christine Hanlon arrived at the hotel room. Hanlon had the officer disrobe and proceeded to give him a nonsexual massage. After twenty minutes, the officer asked if there were any "extras" available; after negotiations, Hanlon agreed to have sexual intercourse with him for an additional $100. When Hanlon completely undressed and crawled into bed with him, he gave a signal and his fellow officers rushed in from an adjoining room and arrested Hanlon for soliciting for prostitution.

Hanlon agreed to cooperate with the police by telephoning defendant and asking her to send a second masseuse to the room under the pretext that the officer wished to have sex with two women. Hanlon specifically used the word "sex" twice in her conversations with defendant, making it clear that the customer was interested in sex for money. Defendant replied that she would send a masseuse named Patti Jo Carlton.[1]

When Carlton arrived, she had the officer lie on the bed and gave him a brief massage. She then reached for his penis as if to masturbate him. He stopped her by asking what else was available. Carlton stated that she would perform oral sex on him for $100. He

---

[1] Carlton was deceased at the time of defendant's trial.

agreed, and Carlton started to perform the act. She was then arrested. Shortly thereafter, a female police officer drove Hanlon and Carlton to a local restaurant parking lot to meet with defendant. Hanlon handed defendant $300, of which $150 was for time she and Carlton spent in the hotel room, and $150 was attributable to other "calls" the two had made.[2] Defendant was then arrested.

II

Defendant first argues that the prosecution presented insufficient evidence to establish beyond a reasonable doubt that defendant was guilty of accepting the earnings of a prostitute and of pandering. We find that sufficient evidence exists to support defendant's conviction of accepting the earnings of a prostitute, but not of pandering.

A

MCL 750.457; MSA 28.712, prohibiting one from accepting the earnings of a prostitute, states:

> Any person who shall knowingly accept, receive, levy or appropriate any money or valuable thing without consideration from the proceeds of the earnings of any woman engaged in prostitution, or any person, knowing a female to be a prostitute, shall live or derive support or maintenance, in whole or in part, from the earnings or proceeds of the prostitution of said prostitute, or from moneys loaned or advanced to or charged against her by any keeper or manager or inmate of a house or other place where prostitution is practiced or allowed, shall be guilty of a felony, punishable by imprisonment in the state prison not more than

---

[2] Defendant received $50 of the $75 initial charge for a massage, with the remaining $25 going to the individual masseuse. In addition, each masseuse was permitted to keep all tips for any "extras" she performed.

twenty years. And such acceptance, receipt, levy or appropriation of such money or valuable thing, shall, upon any proceeding or trial for violation of this section, be presumptive evidence of lack of consideration.

Defendant insists that her conviction under this statute must be reversed because no "sex act" actually took place in the hotel room, and because the money that she received from Carlton and Hanlon at the time of her arrest did not represent proceeds or earnings of prostitution. We disagree.

Contrary to defendant's argument, an actual act of prostitution occurred when Carlton agreed to perform fellatio for $100, and, in preparing to do so, actually initiated physical contact with the officer's "private areas." See *People v Warren*, 449 Mich 341, 347; 535 NW2d 173 (1995) ("sexual stimulation of a customer's penis by direct manual contact, in exchange for money, is prostitution"). Although the act of fellatio was not completed, we find that it was an act of prostitution.

We also reject defendant's claim that the actual currency received by defendant on the night in question was not the proceeds or earnings of a prostitute. Viewing the evidence in a light most favorable to the prosecution, we find that the officer gave both Hanlon and Carlton money in exchange for the massages and the interrupted act of fellatio. Hanlon subsequently gave defendant $300, which represented defendant's share for the time spent by Hanlon and Carlton not only with the officer, but also with previous customers. Defendant's challenge is without merit.

Sufficient evidence was presented to sustain the jury's determination that defendant was guilty of accepting the earnings of a prostitute.

B

Defendant also challenges the sufficiency of the evidence supporting her conviction for pandering. Specifically, defendant argues that because both Carlton and Hanlon were allegedly prostitutes before their encounter with the officer, defendant could not be convicted of inducing, persuading, inveigling, or enticing Carlton and Hanlon to become prostitutes as proscribed by MCL 750.455; MSA 28.710. We agree.

MCL 750.455; MSA 28.710 provides in pertinent part as follows:

> Any person who shall procure a female inmate for a house of prostitution; or who shall induce, persuade, encourage, inveigle or entice a female person to become a prostitute; or who by promises, threats, violence or by any device or scheme, shall cause, induce, persuade, encourage, take, place, harbor, inveigle or entice a female person to become an inmate of a house of prostitution or assignation place, or any place where prostitution is practiced, encouraged or allowed; or any person who shall, by promises, threats, violence or by any device or scheme, cause, induce, persuade, encourage, inveigle or entice an inmate of a house of prostitution or place of assignation to remain therein as such inmate; or any person who by promises, threats, violence, by any device or scheme, by fraud or artifice, or by duress of person or goods, or by abuse of any position of confidence or authority, or having legal charge, shall take, place, harbor, inveigle, entice, persuade, encourage or procure any female person to enter any place within this state in which prostitution is practiced, encouraged or allowed, for the purpose of prostitution . . . shall be guilty of a felony, punishable by imprisonment in the state prison for not more than twenty years.

The pandering statute is designed to penalize individuals who induce, persuade, encourage, or entice women who are not prostitutes into becoming prostitutes. In *People v Cook*, 96 Mich 368, 370; 55 NW 980 (1893), our Supreme Court reversed the defendant's conviction under a statute that made it a felony to "solicit or in any manner induce a female to enter such a house for the purpose of becoming a prostitute." The Court explained:

> Some force must be given to the word "become"; and it is evident that the legislature did not intend to make the offense complete by the mere soliciting of a female who was already a prostitute, and in a house of ill fame, to go from that place into another house of like character. [*Id.* at 373.]

This reasoning was applied to the current pandering statute in *People v Slipson*, 154 Mich App 134, 137; 397 NW2d 250 (1986), where this Court held that a defendant cannot be convicted of violating MCL 750.455; MSA 28.710 if the victim is already a prostitute or the defendant reasonably believes that the person is already a prostitute. Indeed, any other interpretation would render meaningless the phrase "to become a prostitute." *People v Rocha*, 110 Mich App 1, 15; 312 NW2d 657 (1981).

In the present case, the record reveals that both Carlton and Hanlon had engaged in prostitution before their encounter with the officer.[3] The prosecu-

---

[3] When Hanlon telephoned defendant from the hotel room and asked that a second "masseuse" be sent to the room for sexual purposes, defendant advised that she would send Carlton because her other employees "wouldn't do it, you know." Hanlon herself testified that previous clients had asked her for "extras" and that she complied in exchange for money.

tion failed to produce evidence demonstrating beyond a reasonable doubt that the women were not prostitutes before their employment by defendant, and that defendant actually induced, persuaded, or encouraged them to become prostitutes. Consequently, defendant's conviction for pandering must be reversed.

III

Next, defendant challenges the instructions given to the jury regarding the pandering charge. Because defendant did not object to the instruction at trial, relief can be granted only if manifest injustice would result. *People v Van Dorsten*, 441 Mich 540, 544-545; 494 NW2d 737 (1993). Moreover, this issue is rendered moot by our decision that the evidence was legally insufficient to support the pandering charge. However, because the instructions were erroneous and we believe our comments here will be of benefit to the bench and bar, we will address the claims of error raised.

A

In its final instructions to the jury, the court stated:

The defendant is also charged with the crime of pandering. To prove this charge, the prosecution must prove each of the following elements beyond a reasonable doubt:

First, that the defendant persuaded or encouraged . . . Christine Marie Hanlon and/or Patti Jo Carlton, to be prostitutes. A prostitute, again, is a person who does sexual acts for money.

Second, that the defendant did this knowingly and intentionally. This, again, is a specific intent crime, which means that the prosecution must prove not only that the defendant did the acts but that she did the acts with the intent to cause a particular result.

In this case, for this crime, it's necessary that they prove that the defendant intended to persuade or encourage Christine Hanlon or [Patti Jo Carlton] to be a prostitute.

B

Defendant first argues that that the court erred in using the phrase "to be prostitutes" instead of "to become a prostitute" when it instructed the jury on the elements of pandering. We agree.

As we have previously stated, there exists in this context a significant difference between the word "be" and the phrase "to become." The latter embodies the statute's apparent purpose: to protect women from being forced to engage in prostitution where they did not engage in it before. Here, the trial court's final instruction permitted the jury to find defendant guilty of pandering even if she had nothing to do with Hanlon's and Carlton's becoming prostitutes.[4]

The trial court's error in using the word "be" in its instruction regarding the elements of pandering may be attributable to the fact that CJI2d 20.34, the pandering instruction, likewise misstates this element of the crime.[5] Insofar as the standard jury instruction

---

[4] We note that in its initial instruction to the jury, the court advised the jury that in order to find defendant guilty of pandering, the prosecution must prove beyond a reasonable doubt that defendant "forced or persuaded or encouraged [Hanlon and Carlton] to become prostitutes." Although the initial instruction correctly stated this element, it is well settled that where a court gives both a correct and an incorrect instruction, this Court presumes that the jury followed the incorrect charge. *People v Hess*, 214 Mich App 33, 37; 543 NW2d 332 (1995).

[5] CJI2d 20.34 provides, in relevant part, as follows:

(1) The defendant is charged with the crime of pandering. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

[*Choose (2) or (3):*]

uses the phrase "to be a prostitute" instead of the statutory language "to become a prostitute," we find it is erroneous.

C

Defendant also claims that the trial court's instructions broadened the scope of the information. Specifically, defendant notes that the pandering statute penalizes anyone "who shall induce, persuade, encourage, inveigle or entice a female person to become a prostitute . . . ." MCL 750.455; MSA 28.710. Count II of the amended information charged that defendant did "INDUCE, PERSUADE, INVEIGLE OR. ENTICE A FEMALE . . . TO BECOME A PROSTITUTE . . . ." Although the statute includes the word "encourage," the information did not. The trial court's final instruction stated that the first element of the offense was "that the defendant persuaded or encouraged [Hanlon] and/or [Carlton] . . . to be prostitutes." By using the word "encourage," defendant argues, the jury instruction impermissibly broadened the scope of the information.

This issue was squarely addressed in *People v Springs*, 101 Mich App 118, 127-128; 300 NW2d 315 (1980):

> Although the statutory definition of pandering includes "encouraging" a female to become a prostitute, the informa-

---

(2) First, that the defendant [forced / persuaded / encouraged / tricked] [*state name*] to be a prostitute. A prostitute is a person who does sexual acts for money.

*     *     *

(4) Second, that the defendant did this knowingly and intentionally.

tion did not so charge defendant. The prosecution argues that "encouraging" shares the same meaning as "inducing, inveigling, persuading or enticing" so that the variance between the information and the charge does not warrant reversal. We disagree. Inducing, inveigling, persuading, and enticing all imply an active [role] leading to a particular action. Encouraging indicates a less active role. It falls short of persuading. Supporting or reacting positively to a decision already reached by an individual constitutes a form of encouragement. While the information properly could have been amended, even during the trial, so long as defendant had sufficient notice and opportunity to defend against the new charge, it was impermissible for the trial judge to amend the information *sub silentio* by his instructions to the jury. Since it cannot be determined whether the jury's verdict was based on the encouraging or inducing, persuading, inveigling or enticing portion of the charge, reversal is required.

A careful examination of the record leads to the inescapable conclusion that defendant was denied a fair trial. [Citations omitted.]

The trial court's final instruction to the jury in the present case, like that in *Springs*, was erroneous.

IV

Defendant next argues that the prosecutor abused his discretion when he charged defendant with the offenses of accepting the earnings of a prostitute and pandering. Defendant suggests that other offenses, such as attempt, conspiracy, or disorderly person, were more appropriate. Because defendant did not object on this basis before the trial court, she has failed to preserve this issue for appellate review. *People v Grant*, 445 Mich 535, 553; 520 NW2d 123 (1994). Nonetheless, we find no abuse of prosecutorial discretion under the facts presented here. See *People v*

*Yeoman*, 218 Mich App 406, 413-414; 554 NW2d 577 (1996).

v

Finally, defendant contends that her convictions should be overturned because MCL 750.455; MSA 28.710 and MCL 750.457; MSA 28.712 are unconstitutionally vague and overbroad. These challenges have not been properly preserved. *Up & Out of Poverty Now Coalition v Michigan*, 210 Mich App 162, 167; 533 NW2d 339 (1995) ("[i]ssues raised for the first time on appeal, even those relating to constitutional claims, are not ordinarily subject to appellate review"). Nevertheless, this Court may still consider an important constitutional question absent a challenge in the trial court. *People v Gezelman (On Rehearing)*, 202 Mich App 172, 174; 507 NW2d 744 (1993).

Statutes are presumed to be constitutional, and courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent. *People v Hubbard (After Remand)*, 217 Mich App 459, 483-484; 552 NW2d 493 (1996). A statute may be void for vagueness if (1) it does not provide fair notice of the conduct proscribed; (2) it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed; and (3) its coverage is overly broad and impinges on First Amendment freedoms. *People v Piper*, 223 Mich App 642, 645; 567 NW2d 483 (1997). When presented with a vagueness challenge, we examine the entire text of the statute and give the words of the statute their ordinary meanings. *Id.* at 646.

On the basis of these standards, we find that both the pandering statute, MCL 750.455; MSA 28.710, and the statute proscribing accepting earnings of a prostitute, MCL 750.457; MSA 28.712, are not unconstitutionally vague. The statutes provide, in clear and understandable terms, that anyone who induces, persuades, encourages, or entices a woman to become a prostitute, or who earns a living through others who engage in prostitution, shall be subject to criminal prosecution. The language used in the statutes provides fair notice of the proscribed conduct and is not so vague that persons of common intelligence must necessarily guess at its meaning. Further, the statutes do not confer unlimited discretion on the trier of fact to decide if defendant committed the offenses.

Neither are the statutes void for overbreadth. An overbroad statute is one that prohibits constitutionally protected conduct. *People v McCumby*, 130 Mich App 710, 714; 344 NW2d 338 (1983). The overbreadth of a statute must not only be real, but substantial as well, judged in relation to the plainly legitimate sweep of the statute where, as here, conduct and not merely speech is involved. *People v Cavaiani*, 172 Mich App 706, 711; 432 NW2d 409 (1988).

Contrary to defendant's argument on appeal, the statutes at issue do not penalize constitutionally protected behavior; rather, they proscribe specific conduct relating to the inducing of others to become prostitutes and the receiving of proceeds of others' acts of prostitution. The statutes could not reasonably be applied to entirely innocent conduct, as defendant suggests in various hypothetical situations. The statutes are not overbroad.

VI

Defendant's conviction of accepting the earnings of a prostitute is affirmed. Her conviction of pandering is reversed.